## Case No. 15,535.

### UNITED STATES v. KING.

[5 McLean, 208.] [1]

Circuit Court, D. Ohio. April Term, 1851.

COUNTERFEITING—PRESUMPTION FROM POSSESSION OF TOOLS—INDICTMENT AND PROOF—INTENT.

1. On a charge of counterfeiting coin, proof of the fact that a quantity of spurious coins, with tools and instruments for the manufacture thereof, was found in the defendant's possession, will warrant the presumption of his guilty agency, unless negatived by other facts in the case.

2. On an indictment under the section of the act of congress [4 Stat. 121], providing a penalty against any one who shall falsely make, forge, or counterfeit any silver coin, &c., it must appear that it was the intention of the party, in making such coin, fraudulently to pass them as genuine.

3. If it appear that the counterfeit coins were made for any other purpose, though that purpose may not be defensible in a moral aspect, the party is not guilty of the offense contemplated by the statute.

[Cited in U. S. v. Otey, 31 Fed. 70.]

[This was an indictment against Henry King.]

---

1 [Reported by Hon. John McLean, Circuit Justice.]

Mr. Mason, U. S. Dist. Atty.
Stanbery & Norton, for defendant.

LEAVITT, District Judge. The defendant is charged with the offense of making certain counterfeit coins of the United States. The law on which the indictment is framed provides a penalty against any one who shall falsely make, forge, or counterfeit, any silver coin in the resemblance and similitude of any silver coin of the United States, or any foreign silver coin, made current by law. It is not necessary to detain the jury by re-stating the evidence at length. The material facts are, briefly, as follows: Some time in the year 1850, some of the police officers of the city of Cincinnati, visited the rooms occupied by the defendant, in that city. In one room there was a chest, in which were found, at the bottom, and interspersed with the sheets and articles of clothing which it contained, a number of counterfeit coins, consisting of American half dollars and dimes. Some moulds made of plaster, intended for the manufacture of coins, were also found in the chest, and in the room; but these were not complete, and had never been used. The witnesses also discovered, behind a curtain in the same room, a galvanic battery, and some other articles, apparently designed to be used by a showman. The half dollars, six or eight in number, were stuck or glued together, in the manner in which they are used by exhibitors of magical performances; and thus arranged, the mass is called the magical ball or ring. Neither the room or the chest was locked when the officers entered to make the search. The defendant, and a man whose name is Freely, were in the room when the officers entered, and during the examination. When the officers made known the object of their visit, Freely remarked, that there was no counterfeit coin there, that he knew of; and when found, said the defendant had nothing to do with it. The trunk and its contents were claimed by the defendant as his property, who said, when the coins were found, that he was getting up a public exhibition, and that they were intended for use in that way. There is no proof that the defendant passed, or attempted to pass, any counterfeit coin.

On the part of the defense, it is in evidence, that the defendant has lived about three years in Cincinnati, during the greater part of which time he was in the employ of Mr. Farnum, who is engaged in the manufacture of hose. It also appears that the defendant was in the habit of giving occasional public exhibitions of magical performances. Three witnesses state, that they have been present at some of the defendant's performances, in which he used the magical ball or ring, before described. One witness—a distinguished professor of magic—states, that it is usual for those engaged in that business, to use counterfeit dimes or other coins, to avoid the losses to which they are liable from the use of genuine coins. Several witnesses—some of whom

have been well·acquainted with the defendant for ten or twelve years—testify to his general good character.

These being the material facts in evidence, it will be for the jury to decide, whether the charge in the indictment is sustained. To justify a verdict of guilty, the jury must be satisfied that the defendant made, or aided in making, one or more, of the counterfeit coins described in the indictment. And it may be remarked, that the guilty agency of the person charged, in the manufacture of spurious coins, may be satisfactorily made out, without positive proof of the fact. Circumstances may be adduced, sufficient of themselves, to justify a presumption of such agency. The possession of a quantity of false coins, upon the person, or the premises of the party implicated, warrants the inference that he made them. And this inference is greatly strengthened by proof, that instruments or tools, designed for the manufacture of such coins, were found in the possession of the accused person. But this presumption of guilt may be negatived by evidence showing that the false coins, though manufactured by him, were made for an innocent purpose, or a purpose not rendering the act criminal under the provisions of the statute on which the prosecution is based. It will, therefore, be a proper inquiry for the jury, if the evidence satisfies them that the defendant made the coins in question, whether there was the guilty intent to pass them as genuine. The intent with which an act is done, gives it its true legal character, and in general, is a necessary element of crime.

In this case it is insisted that if the defendant made the spurious coins, it was not for the purpose of fraudulent utterance, but to aid him in his performances as a professor of magic. If the jury shall come to the conclusion, from the evidence, that this was the defendant's purpose in making the coins, it is very clear, their verdict must be one of acquittal. The penalty of the statute on which the indictment is framed, is denounced against any person who shall falsely make or counterfeit the coin of the country. The use of the word falsely in the statute implies, that there must be a fraudulent or criminal intent in the act. And the statute contemplates no other intent, in the act of making, as necessary to constitute the crime, but that of disposing of, or passing the spurious coin, as true and genuine. If made for any other purpose—though that purpose is not a justifiable or defensible one in a moral aspect—the party does not incur the legal guilt contemplated by the statute.

It is true beyond all question, that the coin of the country should be scrupulously guarded by law. The social and commercial interests of any people, are involved in its preservation from adulteration and forgery. And it is competent for congress, by suitable enactments, to protect the sacredness of the metallic currency of the country, by a provision that shall punish the act of counterfeiting it, for any, even an innocent purpose. But the existing law checks, does not reach such a case.

The jury returned a verdict of not guilty.